## Pittsburg's Petition.

*Constitutional law—Legislature—Extra session—Proclamation of governor—Act of February 7, 1906, P. L. 7—Municipalities.*

Where the governor has issued a proclamation convening the general assembly in extraordinary session to meet on a day stated to consider legislation upon certain subjects designated, he may subsequently before the date of the meeting issue another proclamation setting forth additional subjects for the consideration of the general assembly at its extraordinary session.

The Act of February 7, 1906, P. L. 7, entitled, "An Act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land, other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each," is within the scope of one of the reasons stated by the governor for calling an extra session of the legis-

lature in 1906, viz: "to enable cities that are now, or may hereafter be contiguous, or in close proximity, including any intervening land to being united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate municipal governments."

*Constitutional law—Local legislation—Municipalities—Union of municipalities—Act of February 7, 1906, P. L. 7.*

The Act of February 7, 1906, P. L. 7, entitled "An Act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each," does not violate section 7, article III of the constitution forbidding local or special legislation.

Classification of cities with the view of legislating for every class separately, is essentially unconstitutional unless a necessity therefor exists,—a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes, are, properly speaking, neither local nor special.

The fact that at the time of the passage of the act of February 7, 1906, the cities of Pittsburg and Allegheny were the only ones in the state to which the legislation would technically apply, does not alone make the act unconstitutional. The act applies to coming years as well as to the present.

*Constitutional law—Due process of law—Annexation of cities.*

The Act of February 7, 1906, P. L. 7, is not contrary to that "due process of law," guaranteed by the Federal constitution, in providing that the electors of the consolidated territory shall determine the question of the annexation of the lesser city, instead of permitting the majority of the electors of the lesser city to decide it.

Argued Oct. 9, 1906. Appeal, No. 37, April T., 1907, by D. Hunter, Jr., et. al. from order of Q. S. Allegheny Co., Dec. T., 1905, No. 71, annexing the city of Allegheny to the city of Pittsburg. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Petition to annex the city of Allegheny to the city of Pittsburg. Before McCLUNG, P. J.

The opinion of the Superior Court states the case.

The appellants filed in the court below the following exceptions :

1. The act of assembly under which this petition is filed is local or special legislation, in conflict with article III, section 7, of the constitution of the state of Pennsylvania, and is unconstitutional.

2. The proclamation of the governor of Pennsylvania, convening the general assembly in special session, does not designate the subjects of legislation embraced and contained in the act of assembly under which this petition is filed, and the said act is therefore in violation of article III, section 25, of the constitution of the state of Pennsylvania, and is unconstitutional.

3. If the paper, or letter, promulgated by the governor of the state of Pennsylvania, on January 9, 1906, shall be held to be a call or authority for legislation thereunder, the said paper or letter does not designate the subjects of legislation embraced and contained within the act of assembly under which this petition is filed, which act therefore is in violation of article III, section 25, of the constitution of the state of Pennsylvania, and is unconstitutional.

4. " The act of the general assembly under which these proceedings are had, is in violation of the law of the land, it being unfair, unjust and unequal ; and is in conflict with the rights and privileges reserved by the people to themselves, in that it permits the qualified electors of the larger city to overpower or outnumber those of the lesser city, and to annex the lesser city without the vote or consent of a majority of the qualified electors of the lesser city.

5. The act of assembly under which this petition is filed for annexing of the city of Allegheny to the city of Pittsburg is in conflict with article I, section 9, paragraph 10, of the constitution of the United States, in that it impairs the obligations of the contract existing between the city of Allegheny and your respondents, by which they are to be taxed only for the government of the city of Allegheny and for improvements, repairs and expenditures incidental to the government of said city of Allegheny, and the attempt to subject them to the increased taxes and burdens of an additional or enlarged city

government, by legislation, is in violation of article I, section 9, paragraph 10, of the constitution of the United States, and therefore is unconstitutional.

6. The act of general assembly under which this petition is filed is in conflict with article V, of the amendments to the constitution of the United States, because if the city of Allegheny shall be annexed in pursuance of the petition filed in this case, it will be depriving your respondents of their property without due process of law, and is therefore unconstitutional. Said annexation of the city of Allegheny to the city of Pittsburg will add additional taxes to the property of your respondents, and create additional burdens without compensation, and will depreciate the value of the property, in violation of said article V of the amendments to the constitution of the United States, and they, therefore, will be deprived of their property.

7. The act of assembly under which this petition is filed is in conflict with article XIV of the amendments to the constitution of the United States, because the said annexation of the city of Allegheny to the city of Pittsburg deprives your respondents of their property without due process of law. The additional taxes and burdens which the property of your respondents will have to bear in case the annexation takes place will cause a large depreciation in the value of the property of your respondents.

*Errors assigned* were (1–7) dismissing exceptions as above, quoting them; and (8) in entering the decree of annexation.

*W. A. Stone*, of *Stone & Stone, Harvey Henderson* and *Wm. C. Gill*, for appellants.—The act of assembly in question is local or special legislation, in conflict with article III, sec. 7, subdivision 2, of the constitution of the state of Pennsylvania.

The law in question is local because it excludes cities that are contiguous or in close proximity; that have boroughs intervening, and, therefore, does not apply to all cities contiguous or in close proximity : Appeal of the City of Scranton School District, 113 Pa. 176 ; Davis v. Clark, 106 Pa. 377 ; Perkins v. Philadelphia, 156 Pa. 554.

If the evident intention was to limit the applications of the

law to one locality, it is in conflict with article III, sec. 7, subdivision 2 : Sample v. Pittsburg, 212 Pa. 533 ; Commonwealth v. Patton, 88 Pa. 258 ; Scowden's Appeal, 96 Pa. 422 ; Davis v. Clark, 106 Pa. 377 ; McCarthy v. Commonwealth, 110 Pa. 243 ; Morrison v. Bachert, 112 Pa. 322 ; Appeal of City of Scranton School District, 113 Pa. 176 ; Weinman v. Passenger Railway Co., 118 Pa. 192 ; Frost v. Cherry, 122 Pa. 417 ; Ruan Street, 132 Pa. 257 ; Wyoming Street, 137 Pa. 494 ; Perkins v. Philadelphia, 156 Pa. 554 ; Philadelphia v. Westminster Cemetery Co., 162 Pa. 105 ; York School Dist.'s Appeal, 169 Pa. 70 ; Sugar Notch Borough, 192 Pa. 349 ; Blankenburg v. Black, 200 Pa. 629.

The law in question is unconstitutional because it is not designated by the proclamation of the governor calling the special session at which it was passed.   Article IV, sec. 12, of the constitution of Pennsylvania, provides that the governor " may, on extraordinary occasions, convene the general assembly : " Wells v. Missouri Pacific Ry. Co., 110 Mo. 286 (19 S. W. Repr. 530) ; Davidson v. Moorman, 2 Heiskell (Tenn.), 575.

The law in question is in violation of the law of the land, it being unfair, unjust and unequal, and is in conflict with the rights and privileges reserved by the people to themselves, in that it permits qualified electors of the larger city to overpower or outnumber those of the lesser city, and to annex the lesser city without the vote or consent of the qualified voters or electors of the lesser city, and the method for consolidation under the law in question is not by " due process of law : " Murray v. Hoboken Land, etc., Co., 59 U. S. 276.

*D. T. Watson* and *W. B. Rodgers*, for appellee.—The act was within the scope of the proclamation : Kilgore v. Magee, 85 Pa. 401 ; Perkins v. Philadelphia, 156 Pa. 539 ; Phila. v. McMichael, 208 Pa. 297 ; Baldwin v. State, 21 Tex. App. 591 (3 S. W. Repr. 109) ; Morford v. Unger, 8 Iowa, 82 ; Craig v. First Presbyterian Church, 88 Pa. 42 ; State v. Shores, 31 W. Va. 491 (7 S. E. Repr. 413) ; Governor's Proclamation, 19 Col. 333 (35 Pac. Repr. 530).

The act is not local : Wheeler v. Philadelphia, 77 Pa. 338 ; Blankenburg v. Black, 200 Pa. 629 ; Sharpless v. The Mayor,

etc., of Phila., 21 Pa. 147 ; West Philadelphia Borough, 5 W. & S. 281 ; Little Meadows Borough, 28 Pa. 256 ; s. c. 35 Pa. 335.

OPINION BY ORLADY, J., November 19, 1906 :

On November 11, 1905, the governor of the commonwealth, by virtue of the authority vested in him by article IV., section 12 of the constitution, issued a proclamation convening the general assembly in extraordinary session to meet on January 15, 1906, to consider legislation upon seven designated subjects ; the first being, " to enable contiguous cities in the same counties to be united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate city governments." On January 9, 1906, by a proclamation reciting that " an extraordinary session of the general assembly of the commonwealth of Pennsylvania has been called," as above stated, the governor designated four " additional subjects for the consideration of the general assembly with a view to legislation at the said session with respect to them ; " the fourth being " to enable cities that are now, or may hereafter be contiguous or in close proximity, including any intervening land, to be united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate municipal governments. This fourth subject is a modification of the first subject in the original call, and is added in order that the legislation may be enacted under either of them as may be deemed wise." Pursuant to these proclamations the general assembly convened in extraordinary session, and enacted among others, the statute which gives rise to this controversy. It is entitled " an act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality ; providing for the consequences of such consolidation, the temporary government of the consolidated city, payment of the indebtedness of each of the united territories, and the enforcement of debts and claims due to or from each ; " and was approved by the governor on February 7, 1906, P. L. 7. The councils of the city of Pittsburg directed the mayor of that city to file a petition in the court of quarter sessions of Allegheny county praying " that the cities of Pittsburg and

Allegheny shall be united and become one city," as provided by the said act. When the petition was presented an order was made fixing March 8th, for the hearing of the petition, after notice had been given to the mayor of Pittsburg and the mayor of Allegheny, the clerk of the councils of each of the said cities, and publication in three named newspapers in the county. The present appellants, who are resident citizens, and owners of property in the city of Allegheny, filed exceptions to the petition, and an answer thereto, and after due hearing the court filed a decree in which the exceptions filed were dismissed, the proceedings held to be regular, and in conformity with the act of assembly; and directed, that an election should be held, to enable the lawful voters to vote for or against the consolidation of the two cities. This election resulted in a majority of 20,154 out of a total vote of 37,864 in the two cities in favor of consolidation, and on June 16th, the court " ordered, adjudged and decreed that the city of Allegheny, the lesser city, be annexed and consolidated with the city of Pittsburg, the greater or larger city, so that they form but one city in the name of the city of Pittsburg," from which decree this appeal was taken.

It is earnestly contended by the appellants that the whole proceeding must fall; because, first, the act in controversy is not within the terms of the proclamation of the governor convening the general assembly; second, it is local or special legislation in conflict with the constitutional prohibitions; third, it is unfair, unjust and unequal in that it permits the electors of the larger city by their votes to annex the lesser city without the consent, and against the protest of a majority of the electors of the lesser city, and hence it is not by " due process of law " as guaranteed by the federal constitution.

The constitution of our commonwealth declares that, " the supreme executive power shall be vested in the governor who shall take care that the laws be faithfully executed," (art IV., sec. 2) ; " he shall from time to time give to the general assembly information of the state of the commonwealth and recommend to their consideration such measures as he judge expedient," (sec. 11) ; that, " he may on extraordinary occasions, convene the general assembly," (sec. 12). By article III., section 25, it is provided, " when the general assembly shall be con-

vened in special session there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session."

It must be conceded that the determination as to whether an occasion exists for an extraordinary session is a matter entirely for the executive: Cooley's Constitutional Limitations, 6th ed., 187. The form in which the general assembly is to be convened, the requisites of the proclamation, and the measure of the notice to be given to the members of that body are not prescribed by the constitution, hence no challenge lies to either the necessity for such a meeting, or the correctness of the precedent notice. Had the governor chosen to issue as many proclamations to consider legislation as there were subjects embraced in the two he did issue, it would be at most a matter of form and not of substance. He is not restricted in regard to this, and the fact that he did issue one did not exhaust his authority. While it is mandatory upon the executive to designate the subjects to be considered by the general assembly, it is outside our duty to go beyond the words of the law to inquire whether all of the other precedent formalities have in fact been complied with. The law before us is certified by both houses and approved by the governor, with adequate proclamations convening the legislature which are equal to the constitutional requirement, and whether the first subject-item in the original is sufficiently comprehensive to warrant the enactment of the statute now under consideration is not material, inasmuch as the fourth subject-item of the second or amendatory proclamation is unquestionably so. Moreover, the designation of the subject, so far as this case is concerned, is in no wise ambiguous ; and that it was clearly understood by the legislature, and that this enactment was responsive to the call of the governor, is clearly shown by the title to the act itself, as above quoted.

It is urged that this act is in conflict with the constitutional prohibition contained in the seventh section of article III., to wit : " The general assembly shall not pass any local or special law, regulating the affairs of counties, cities, townships, wards, boroughs, or school districts." This section has been a fruitful source of litigation, and the decisions of the courts are not in entire harmony in regard to its application to the many acts of assembly which have been submitted for review. As stated

in Perkins v. Philadelphia, 156 Pa. 539 : " It is almost wholly prohibitory; it enjoins very few duties, but the 'thou shalt not's' number more than sixty "; and, as stated by Judge MITCHELL in his dissenting opinion thereto, " It is a barbed wire fence around all legislative action, bristling with points of danger even to the most honest, and desirable, and essential laws. A literal adherence to all its provisions would have stopped the wheels of government, and so this court was forced to hold when the first great question of the needs of municipal legislation came before it. Some elasticity was absolutely indispensable, and it was found in the principle of classification. I make these observations and this illustration to call special attention to the necessity for reading the constitution, where it relates to the powers of the legislative branch of the government, in a broad and liberal way, looking to its spirit as more controlling than its mere words. If the statute does not offend against the spirit, does not really do the thing which the constitution means to prohibit, then it should be sustained, although its form may be liable to objection under the strict words of the prohibition. It must be conceded in the light of our many authorities that the legislature may classify cities according to population, and to legislate upon some subjects at least for each class separately : " The welfare of the state and one of the chief purposes of legislation would be struck down by such a decision." In Clark's Estate, 195 Pa. 520, the Supreme Court reiterate the same thought, viz :—that the constitutional restrictions had to a great extent to be expressed in general terms, and the inadequacy of language to express the purpose with entire precision, as well as the determination of the framers of the instrument to make the prohibition effective at all hazards, led to its embodiment in terms that are liable to cover with the letter, cases that are not within the spirit and real intent. Constitutions are not to receive a narrow or technical or too literal construction ; they get their authority from the adoption of the people, and they are to be read in a broad, and as far as possible, an untechnical way to carry out their real purpose.

The creation of municipal corporations has been said to be an attribute of that sovereignty which regulates the affairs of the people and their government, the essential requisites be-

ing territory and population. The review of the underlying principles and authorities sustaining them is concisely and clearly stated by the present Chief Justice of the Supreme Court in Commonwealth v. Moir, 199 Pa. 534, as follows: "Municipal corporations are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been more clearly expressed and more uniformly applied than in Pennsylvania. . . . The fact that the action of the state toward its municipal agents may be unwise, unjust, oppressive, or violative of the natural or political rights of their citizens, is not one that can be made the basis of action by the judiciary. . . . This court is not authorized to sit as a council of revision to set aside or refuse assent to ill-considered, unwise or dangerous legislation. Our only duty and our only power is to scrutinize the act with reference to its constitutionality, to discover what if any provisions of the constitution it violates." Nor are the courts at liberty to declare an act void, because in their opinion it is opposed to a spirit supposed to pervade the constitution, but not expressed in words. When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, we cannot declare a limitation under the notion of having discovered something in the spirit of the constitution which is not even mentioned in the instrument: Cooley's Constitutional Limitations, chapter 7, sec. 6. A constitution is not to receive a technical construction like a common-law instrument or statute. It is to be interpreted so as to carry out the great principles of the government, not to defeat them: Commonwealth v. Zephon, 8 W. & S. 382: and it matters not how arbitrary the enactment may appear to those who feel dissatisfied with or injured by it: Commonwealth v. Vrooman, 164 Pa. 306. "The restrictions of the constitution upon legislation apply to direct legislation, not to the incidental operation of statutes constitutional in themselves upon other subjects than

those with which they directly deal: " Sugar Notch Borough, 192 Pa. 349.

It was said in Wheeler v. Philadelphia, 77 Pa. 338, which was decided the year following the adoption of the constitution : " Legislation is intended not only to meet the wants of the present, but to provide for the future. It deals not with the past, but in theory, at least, anticipates the need of a state,. healthy with a vigorous development. It is intended to be permanent. At no distant day Pittsburg will probably become a city of the first class ; and Scranton, or others of the rapidly growing interior towns will take the place of the city of Pittsburg, as a city of the second class. In the meantime, is the classification as to cities of the first class bad because Philadelphia is the only one of the class? We think not. Classification does not depend upon numbers." The rule is stated in Lloyd v. Smith, 176 Pa. 213, that " a law which does not exclude any one from a class, and applies to all the members of the class equally, is general," and the converse is also true that a law which does permanently exclude any one from the class must be special. The fact that the law applies to only one county now would not be a sufficient objection if in the natural progress of events under existing laws, others may grow into the class hereafter. But the way must be clear for them to do so : Blankenburg v. Black, 200 Pa. 629. If by any reasonable construction of the language the act is constitutional, such must be adopted. A construction which compels the court to declare an act unconstitutional must be plain, and positive, and peremptory : Sharpless v. The Mayor, etc., of Phila., 21 Pa. 147 ; clearly, palpably, plainly and in such manner as to preclude doubt or hesitation : Speer v. School Directors, etc., of the Boro. of Blairsville, 50 Pa. 150.

In Weinman v. Railway Co., 118 Pa. 192, the court says: " For purposes of local government the state is subdivided into counties, townships and other municipal and quasi-municipal corporations. Each class of these sub-divisions has purposes to subserve that are peculiar to it, and needs to be invested with the powers necessary to that end. Generally speaking, all the members of each class have the same local functions to perform. Classification therefore upon this basis has been recognized, and a statute relating to all the townships, all the school

districts, or all the members of any particular divisions of the state, has been held constitutional. It has been found desirable to divide cities into classes upon the basis of their population. The needs of a great city with half a million or more of people are somewhat different in many respects from the needs of a city with ten thousand. The organization of their local governments, and the management of their municipal affairs will be quite unlike. Each of these classes requires legislation peculiar to itself; but such legislation must be applicable to all the members of the class to which it relates, and must be directed to the existence and regulation of municipal powers and to matters of local government."

The underlying principle of all the cases is that classification, with the view of legislating for every class separately, is essentially unconstitutional unless a necessity therefor exists,— a necessity springing from manifest peculiarities, clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class, separately, that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes, are, properly speaking, neither local nor special. They are general laws, because they apply alike to all that are similarly situated as to their peculiar necessities. All legislation is necessarily based on a classification of its subjects, and when such classification is fairly made, laws enacted in conformity thereto cannot be properly characterized as either local or special: Ayars's Appeal, 122 Pa. 266. The necessity spoken of by the court in Wheeler v. Philadelphia, 77 Pa. 338, was the necessity of escape from the intolerable inconveniences of uniformity of regulations under circumstances and needs essentially different. And in general with reference to public matters and legislative usage, necessity means great, or urgent public convenience. Thus viewers under the act of June 13, 1836, are required to examine and report " whether the road desired be necessary for a public or private road " etc. It cannot be contended that anything more is meant than public convenience: Commonwealth v. Gilligan, 195 Pa. 504.

The act under review presents a phase of the legislative authority that differs in many respects from the decided cases, and the exigencies which justified and made necessary " classi-

fication of the state's agencies" are now presented with equal merit to warrant the consolidation of cities. Both of the cities affected by this proceeding are of the second class, and the consolidated city remains in that class, so that the relation of the municipality to the state is not in any way changed. The mutation will be, that the two cities will be united into one, and under the same legislative and executive officers, so that all the departments having charge of the health and education of the people, the protection of their lives and property will be administered under a uniform and comprehensive system assuring better results with a more homogeneous government. Many acts of the legislature have provided for the creation of counties and boroughs and townships, and when by reason of new and unexpected conditions, it was deemed expedient by the legislature to redefine the subdivisions of the state as the necessity therefor arose, to change their boundary lines; to annex adjoining and adjacent corporations of like character; to permit a borough or township to be annexed to an adjoining city; to divide a county and erect a new one therefrom. In the judgment of the legislature the time has now arrived when, to the powers already given to the local municipalities, there should be added the authority to enable cities that are now or may hereafter be contiguous or in close proximity to be united into one municipality.

We must go outside of the words of the statute to give it a local or special application. The terms imposed by the bill —contiguous or in close proximity—not only apply to reason, but they are founded on the common sense of mankind, as it could hardly be possible that cities not contiguous or in close proximity to each other could ever be united. Intervening municipalities or large areas of land would be an absolute bar to a uniform and coherent administration of municipal law. Under this act all cities that are contiguous may consolidate. There is no qualifying language of any kind excluding from the class, any contiguous cities. There is nothing in the act to localize it by geographical description, and it applies to all cities in the commonwealth. It embraces all cities, which are or may come into like situation and circumstances. The qualifications named are not artificial like the act which was held unconstitutional in Sample v. Pittsburg, 212 Pa. 533, which

provided, "for purposes of this act cities separated by a stream, river or highway shall be included under the term contiguous." Even if we have recourse to statistical and geographical facts of which the courts take judicial notice, we find that under the last census of 1900 there is but one city of the first class, three of the second class, and twenty-one of the required population necessary for the third class. In addition to these there are eighteen boroughs having a population of over 10,000, and a number of others which, if the same proportion of increase in population is upheld during the present as the last decade, will have the required population to entitle them to a city government, and they are so located as to be reasonably within the terms of the present act. Many instances could be noted, showing the rapidity increasing centers of population which in but a few years will be in a position to accept the provisions of the act. They will not necessarily do so, but in the natural progress of events it is to be expected that some of them will. This act affords the opportunity to such cities to centralize the administration of the law "in order that the people may avoid the unnecessary burdens of maintaining separate city governments" as suggested in the proclamation of the governor. The appellants with great frankness say that "the question whether Pittsburg and Allegheny ought to be consolidated or not is a legislative question, and not a judicial one. The courts will consider only the law of the case, wholly unaffected by either the desire for consolidation in Pittsburg, or the opposition to it in Alleghany. The question of expansion, zeal, enterprise and pride in having a large city in the western part of the state are outside the pale of consideration of the courts." It must be accepted as definitely settled, that a municipal corporation is a creature of the state; it derives its powers from the state; the power that makes can unmake, change or modify. The public good must always be the controlling question, and to effectuate this the whole law-making power is committed to the legislature. Its command must prevail unless it clearly transgresses the constitutional declaration: Gas & Water Company v. Downingtown Borough, 175 Pa. 341; Lloyd v. Smith, 176 Pa. 213; Sugar Notch Borough, 192 Pa. 349; Commonwealth v. Gilligan, 195 Pa. 504.

The cities of the commonwealth are divided into three classes

by the Act of June 25, 1895, P. L. 275. The organization of the cities of the third class is provided for by the Act of May 23, 1889, P. L. 277, to wit: "Whenever a majority of the electors of any town or borough, or of any two or more contiguous towns or boroughs, situate within the limits of the same county, and having together a population of at least 10,000 according to the last preceding census, shall vote at any general election in favor of the same" after the corporate authorities of such towns or boroughs shall direct an election to be held upon the question of becoming a city.

It may be that at the time of this enactment the cities of Pittsburg and Allegheny were the only ones in the state to which the legislation would technically apply. This fact alone does not make the act unconstitutional. The extraordinary development of the natural resources of this commonwealth, and the increasing number of its industrial manufactories have developed centers of population which within the past half century have changed from mere hamlets to thriving boroughs and cities. This legislation applies to the coming years as well as to the present; while it provides for a present condition as to these two cities, it anticipates what will be the apparent necessities within a few years, of a number of cities of the third class which will come within the limitations of this act,—contiguous or in close proximity to another city.

The prescribed conditions mentioned in the act are fairly met by the facts developed on the hearing of this case. It is undisputed that Pittsburg and Allegheny are contiguous cities of the same class. It is also apparent that the judgment of the legislature in permitting such consolidation is approved by a very large majority of the voters within the consolidated territory, and while popular approval of an act has nothing to do with its constitutionality, it is significant of the demand for just such legislation, if it can be legally effected. The first legislature after the adoption of the constitution authorized the incorporation of a city whenever a majority of the electors of any town or borough, or of any two or more contiguous towns or boroughs having a population of at least 10,000, shall vote at any town election in favor of the same (Act of May 23, 1874, P. L. 230), and after this lapse of time, the legislative declaration that it was right and necessary to permit two contiguous cities to unite

upon practically the same terms marks a consistent evolution of our laws, commensurate with the material growth of our state and increase in our population.

Legislation for a class, distinguished from a general subject, is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine, the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification: Seabolt v. Commissioners of Northumberland County, 187 Pa. 318; Stegmaier v. Jones, 203 Pa. 47.

In Sample v. Pittsburg, 212 Pa. 533, the decision turned upon the question whether the act was local or special legislation in contemplation of the constitutional provision prohibiting such legislation. As stated in that case, the act " not only affects the people of the two cities, but concerns the two cities in their governmental and corporate capacities. It enlarges the territory and population of the one, and deprives the other of its charter and government of a city. It is apparent, we think, that the act is ' a law regulating the affairs of ' the cities in question." All that is conceded to be within the power of the legislature, if the legislation is not within the prohibition —that is a local or special law. The Act of April 20, 1905, P. L. 221, was held to be unconstitutional in that case, and the act now under consideration was evidently passed to meet the objections set by the Supreme Court. It comes to us with the approval of our state legislature and the governor, as representing the last and best thought on this important subject. This statute is free from the objections which were successfully urged against the one of 1905, and in regulating the affairs of cities it is not local nor special, but applies to and permits all " cities which are now, or may hereafter be, contiguous or in close proximity, with any intervening land other than boroughs, to be united in one municipality," as stated in its title. The conditions imposed are not in violation of any constitutional provision.

In determining whether this act is contrary to that " due

VOL. XXXII—15

process of law" guaranteed by the federal constitution, in providing that the electors of the consolidated territory shall determine the question of annexation of the lesser city instead of permitting the majority of the electors of the lesser city to decide it, we have many adjudicated cases which warrant the action taken by the legislature. The words "due process of law," as taken from Magna Charta and incorporated in the constitution, "were intended.to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principle of private rights and distributive justice." In each particular case the words mean "such an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs : Cooley's Constitutional Limitations, 434. The people of the municipalities do not define for themselves their own rights, privileges and powers, nor is there any common law which draws a definite line of distinction between the powers which may be exercised by the state and those which must be left to the local governments : 2 Kent's Commentaries, 278, 279. The general principle is that when the state is acting in its sovereign capacity, it acts for the whole commonwealth, and private rights and interests must yield to this paramount object. Private rights may be and very frequently are interfered with by either the legislature, executive or judicial departments of the government, and the creation of municipal corporations, and the conferring upon them of certain powers and subjecting them to corresponding duties, does not deprive the legislature of the state of that general control over their citizens which they before possessed. It still has authority to amend their charters, enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, and overrule their legislative action whenever it is deemed unwise, impolitic or unjust, and even abolish them altogether in the legislative discretion and substitute those which are different: Cooley's Constitutional Limitations, 228. Restraints on the legislative power of control must be found in the constitution of the state, or they must rest alone in the legislative discretion. If the legis-

lative action operates injuriously to the municipalities or to individuals the remedy is not with the courts. The courts have no power to interfere, and the people must be looked to, to right through the ballot box all these wrongs : Ervine's Appeal, 16 Pa. 256. Cooley's Constitutional Limitations, 228, 229, 230. The act in question has been passed with all the forms and ceremonies requisite to make it a valid statute. The legislature was properly convened and kept well within its powers in regulating the affairs of cities by a general law in accord with the requirements of the constitution.

It follows, under the law of the land, that neither the municipality as such, or any of the persons residing therein, have any vested rights in the municipal powers, as against the state which created the municipality. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—subject to legislative control " which may destroy its very existence with the mere breath of arbitrary decision : " Phila. v. Fox, 64 Pa. 169. Otherwise there would be numberless petty governments instituted within the state, forming a part of it, but independent of the control of the sovereign power. These local governments are mere auxilliaries to, and in the aggregate they constitute the commonwealth at large which through its legislature may, at will, create, change, reorganize, consolidate or abolish them, and that wholly irrespective of the wishes or consent of those composing the local body politic : 1 Smith's Mun. Corp. secs. 97, 407, 408 ; 1 Hare's Am. Consti. Law, 628 ; 20 Am. & Eng. Ency. of Law (2d ed.), 1218, 1224 ; 10 Am. & Eng. Ency. of Law (2d ed.), 290 ; McGehee's Due Process of Law, 50, 60.

The assignments of errors are overruled and the decree is affirmed.