PER CURIAM, February 15, 1909:

The order dismissing the appeal from the register is affirmed for the reasons stated in the opinion of the learned president of the orphans' court.

---

## Likins's Petition (No. 1).

*Constitutional law—Special sessions of leglislature—Proclamation by governor—Title of act—Corrupt practices act—Act of March 5, 1906, P. L. 78.*

1. The Act of March 5, 1906, P. L. 78, known as the corrupt practices act, and entitled: "An act to regulate nomination and election expenses, and to require accounts of nomination and election expenses to be filed, and providing penalties for the violation of this act," does not violate sec. 25, of art. III of the constitution, which provides that, "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such sessions."

2. The subject of secs. 9, 10, 11 and 12 of the act of March 5, 1906, is sufficiently designated in sec. 3 of the governor's supplemental proclamation of January 9, 1906, as follows: "To designate the uses to which moneys may be applied by candidates, political managers and committees in political campaigns, both for nominations and elections, and to require the managing committee and managers of all political parties to file with some designated official at the close of each campaign, a detailed statement in writing accompanied by affidavit, of the amounts collected and the purposes for which they were expended."

3. In order to interpret the proclamation of the governor the courts are bound to give the words used the same fair and reasonable meaning and intendment which they apply when considering a statute, and the general scope and sufficiency of the proclamation is to be determined by the same well-known rules. The purpose of the proclamation is to inform the members of the legislature of the designated subject which they are convened to consider, and when the general assembly enacts a law which is fully and clearly responsive to such a call, both in its title and in the body of the act, such law will be maintained by the courts.

4. The Act of March 5, 1906, P. L. 78, is sufficient in title and is not in conflict with sec. 3, art. III of the constitution.

5. A subject in a title to a general law should be more comprehensive and clearly expressed than in a proclamation to the members of the general assembly who are convened to consider particular legislation.

The framers of the constitution had this difference in mind in not requiring the same particularity in the wording used in the proclamation and that required in the title of a statute.

6. The courts are not at liberty to declare statutes void because of their apparent injustice or impolicy. Neither can they do so because they appear to the minds of the judges to violate fundamental principles of republican government, unless it should be found that these principles are placed beyond legislative encroachment by the constitution. The only duty and power of the courts is to scrutinize the act with reference to its constitutionality in order to discover which principle of the constitution, if any, is violated.

7. Whatever the people have not, by their constitution, restrained themselves from doing, they, through their representatives in the legislature, may do. This latter body represents their will just as completely as a constitutional convention in all matters left open by the written constitution.

Argued Feb. 1, 1909. Appeal, No. 2, Jan. T., 1909, by Wm. M. Likins et al., from judgment of Superior Court, April T., 1908, No. 222, reversing order of Q. S. Fayette Co., Dec. T., 1907, No. 285, dismissing petition of W. M. Likins et al., for audit of the account of John R. Byrne, Chairman and Treasurer of the Republican County Committee. Before FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Appeal from Superior Court.

ORLADY, J., filed the opinion of the Superior Court, which was as follows:

In accordance with the provisions of the Act of March 5, 1906, P. L. 78, known as the corrupt practices act, this proceeding was instituted in the court below upon a petition signed by five qualified electors, praying for an audit of an account filed by John R. Byrne, chairman and treasurer of the republican committee of Fayette county for 1907. A motion to quash, an answer and a demurrer were filed, and after a full hearing the court held the governor's proclamation and the subject of the Act of March 6, 1906, P. L. 78, to be in conflict with, and to offend against, sec. 25 of art. III of the constitution; and then dismissed the petition and quashed the proceedings; whereupon the petitioners bring this appeal. We are met at the thres-

hold of this case with a large number of adjudications by the appellate courts which define our duty in considering the question involved as stated by the appellant, viz.: "Does the governor's supplemental proclamation of January 9, 1906, designate the subject of secs. nine, ten, eleven and twelve of the Act of March 5, 1906, P. L. 78?" Do these sections conflict with or offend against sec. 25, art. III, of the constitution which provides that: "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such sessions." The appellee urges that while the controversy involves the constitutionality of the whole of the act, in a narrower and stricter sense, its ninth section is particularly the subject of attack, and if either the whole act, or the ninth section is held unconstitutional, the judgment of the court below should be affirmed. The proceeding has its foundation in the ninth section, which requires that when such an account has been filed, five electors may present a petition to the court of quarter sessions of the county in which the office is situated, where such account has been filed, praying for an audit of such account, and it was at this stage of the proceeding that the petitioners invoked the aid of the court to appoint an auditor to audit the account. The whole course of decision in the appellate courts has been consistent in the effort to carry out the true intent of statutory enactments instead of resorting to sharp criticism, which must often bring legislation to naught, and as said in Allegheny County Home's Appeal, 77 Pa. 77, "It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title, as it comes before us, a reasonable interpretation. If the title fairly gives notice of the subject of the act, so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. "It need not be an index to the contents, as has often been said," as such an interpretation would make the act and the title but repetitions of each other. In Sharpless v. Mayor, etc., of Phila., 21 Pa. 147, the mode of construction of legislative enactments is stated as follows: "The federal constitution confers powers particularly enumerated; that of the state

contains a general grant of all powers not excepted. The construction of the former instrument is strict, against those who claim under it; the interpretation of the latter is strict, against those who stand upon the exceptions, and liberal in favor of the government itself. The federal government can do nothing but what is authorized expressly or by clear implication; the state may do whatever is not prohibited." We can declare an act of assembly void, only when it violates the constitution clearly, plainly and in such manner as to leave no doubt or hesitation in our minds. This principle is asserted by judges of every court, both Federal and state, and by some of them it is expressed with great solemnity of language. In Erie & North East Railroad Company v. Casey, 26 Pa. 287, the same thought is expressed as follows: "The right of the judiciary to declare a statute void and to arrest its execution, is one which, in the opinion of all courts, is coupled with responsibility so grave that it is never to be exercised except in very clear cases. One department of the government is bound to presume that another has acted rightly."

These principles are necessary incidents of the lawmaking power. "In creating a legislative department and conferring upon it the legislative power, the people must be understood to have conferred the full and complete authority as it vests in and may be exercised by the sovereign power of any state, subject only to such restrictions as they have seen fit to impose, and to the limitations which are contained in the Constitution of the United States. The legislative department is not made a special agency for the exercise of specially defined legislative powers, but is entrusted with the general authority to make laws at discretion:" Cooley's Const. Lim. 87; Powell v. Commonwealth, 114 Pa. 265. We cannot try the constitutionality of a legislative act by the motives and designs of the lawmakers, however plainly expressed. If the act itself is within the scope of their authority, it must stand, and we are bound to make it stand if it will upon any intendment.

It comes to us with the seal of approval of two co-ordinate departments of the government, and to doubt is to decide in favor of its constitutionality; and again, it is said, nothing but

a clear violation of the constitution—a clear usurpation of power prohibited—will justify the judiciary department in pronouncing an act of the legislative department unconstitutional and void: Pennsylvania R. R. Co. v. Riblet, 66 Pa. 164. The constitution allows the legislature every power which it does not positively prohibit. The wisdom, justice or expediency of the passage of an act of the legislature is not the subject of debate in our courts of justice. In one of the more recent cases, Sugar Notch Borough, 192 Pa. 349, the present chief justice stated: "It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor, and courts will not be astute in finding or sustaining objections. . . . The express enumeration of the specific subjects must be affirmatively misleading as to the intent to exclude others, or the title will not be made invalid by it. The constitutional requirement as to the title is not to be strained to apply to cases not really within its reasonable intent," and in Com. v. Moir, 199 Pa. 534, "The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of right, reason and expedience with the lawmaking power. If the courts are not at liberty to declare statutes void, because of their apparent injustice or impolicy, neither can they do so because they appear to the minds of the judges to violate fundamental principles of Republican government, unless it should be found that these principles are placed beyond legislative encroachment by the constitution:" Cooley on Const. Lim., chap. 7, sec. 4. Our only duty, and our only power is to scrutinize the act with reference to its constitutionality in order to discover which principles of the constitution, if any, it violates. Whatever the people have not, by their own constitution, restrained themselves from doing, they, through their representatives in the legislature, may do. This latter body represents their will just as completely as a constitutional convention in all matters left open by the written constitution: Com. v. Reeder, 171 Pa. 505. The power of construing the constitution devolves upon the judiciary through the mani-

festation of the political principle that ours is a government of laws, rather than of men.   In exercising that power the courts should take a large and comprehensive view of the constitution, ever mindful that every scripture is to be interpreted in the same spirit that gave it forth, and with a deep desire to enforce its full meaning.

It is specially urged that the proclamation of the governor of March 5, 1906, P. L. 78, item "Third.  To designate the uses to which moneys may be applied by candidates, political managers and committees in political campaigns, both for nominations and elections, and to require the managing committees and managers of all political parties to file with some designated official at the close of each campaign, a detailed statement in writing, accompanied by affidavit, of the amounts collected and the purposes for which they were expended," is not sufficiently specific to sustain the act, as being in conflict with and offending against sec. 25 of art. III of the constitution, which reads: "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor, calling the special session."

Among the specially delegated powers of the governor of this commonwealth, is the authority given in sec. 12 of art. IV of the constitution as follows: "He may, on extraordinary occasions, convene the General Assembly," etc.  Pursuant to this authority the governor issued a proclamation and indicated as one of the four subjects the item third above quoted, "for the consideration of the General Assembly, with a view to legislation at the said session with respect to them."  An additional article was included in the same proclamation, relating to legislation on the subject, "To enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united in one municipality," etc.  This latter feature of the proclamation, as well as the legal effect to be given to it, was considered by this court (Pittsburg's Petition, 32 Pa. Superior Ct. 210) and exhaustively reviewed in Pittsburg's Petition in 217 Pa. 227, when it was conclusively established that, "Whether the General Assembly ought to be called together in extraor-

dinary session is always a matter for the Executive alone. How it shall be called together, and what notice of the call is to be given, are also for him alone. The constitution is silent as to these matters and wisely so. . . . A proclamation, however, is the proper mode of calling the legislature together, and the constitution seems to so contemplate, for Section 25, article III, speaks of the proclamation. But no form of the proclamation is to be followed. . . . This, however, is not for the judiciary, but for the governor alone. . . . With every presumption in favor of the compliance by the Executive with the constitutional requirements relating to his calling the General Assembly together in extraordinary session, it would be judicial hypercriticism to declare his second notice or proclamation insufficient to authorize the legislature to pass the act under consideration."

The subject embraced in the third item of the second proclamation should be considered, not in subdivisions or detached parts, but in its entirety. It represents a continuous and complete thought in one sentence, which refers to a general project, the uses to which money may be applied in political campaigns,—and in ascertainment of this, the required filing of statements in writing of the amount of such moneys collected and the purposes for which they were expended. In order to interpret the proclamation of the governor, we are bound to give the words used the same fair and reasonable meaning and intendment which we apply when considering a statute, and the general scope and sufficiency of the proclamation is to be determined by the same well-known rules. The purpose of the proclamation is to inform the members of the legislature of the designated subject which they are convened to consider, and when the general assembly enacts a law which is fully and clearly responsive to such a call, both in its title and in the body of the act, it is playing on words to say that the call, as such, was misleading or insufficient. As we said in Pittsburg's Petition, 32 Pa. Superior Ct. 210, "While it is necessary upon the executive to designate the subjects to be considered by the general assembly, it is outside our duty to go beyond the words of the law to inquire whether all of the other precedent formalities

have in fact been complied with." Moreover, the designation of the subject, so far as this case is concerned, is in no wise ambiguous; and that the general assembly clearly understood its meaning, and that this enactment was responsive to the call of the governor, is clearly shown by the title and body of the act. That the proclamation, so far as it relates to the act under consideration was equally clear and that the notice it carried was plain, is demonstrated by the records of the legislature with the debates, amendments and final enactment followed by the approval of the governor. The necessity for such legislation was manifested by the call of an extraordinary session of the general assembly.

Had this legislation been enacted at a regular instead of an extraordinary session of the general assembly, the attack against it would have been confined to the sufficiency of the title, but this feature of the assault was not sustained by the court below, as the learned judge properly denied and refused the contention that the title to the act did not clearly express the subject, and he held that it was not in conflict with sec. 3, art III of the constitution. The oath of office prescribed by art. VII of the constitution of 1873, includes the declaration: "That I have not paid or contributed, or promised to pay or contribute, either directly or indirectly, any money or other valuable thing, to procure my nomination or election or appointment except for necessary and proper expenses expressly authorized by law." Sections 8 and 9 of art. VIII of the same fundamental law, define and declare the offense of bribery of an elector and prescribe a penalty for violation of the election laws. Former legislative enactments were deemed inadequate, and this was a step forward as an added requirement to safeguard the ballot box from the pollution of fraudulent votes, by making more specific and by defining with greater particularity "the uses to which money may be applied by candidates, political managers and committees in political campaigns both for nominations and elections." The constitution and the general assembly by prior declarations had directed attention to this general subject, and the provisions contained in the body of the act under consideration are but details of the general purpose expressed in the title, which

fairly and clearly expresses its purpose by which all those who are interested, or may be affected by its provisions are put upon inquiry. No one could read either the proclamation of the governor, or the title of the act without meeting the subject referred to in both—the use of money in elections—and as we said in Com. v. Jones, 4 Pa. Superior Ct. 362, "The subject may have but one object, while the means necessary for the attainment of that object may necessarily embrace separate subjects differing in their nature and particular effect, yet all contributing to it and comprised within the principal subject. Everything which the language of the subject of a title reasonably suggests as necessary or appropriate for the accomplishment of its express purpose, is sufficiently enacted by its title," and either the proclamation or the title is sufficiently clear and explicit to invite an inquiry into the body of the bill. Nor is the requirement of the law satisfied by anything short of an examination of the whole body of the act, when an inquiry is once invited by a sufficient title, and the same reasonable rule applies to the sufficiency of the proclamation. The learned court below concluded that the legislature, under this proclamation, could not at this special session pass a law of a general character "regulaing" nominations and election expenses, and that there was no authority to go beyond what is implied and expressed in the proclamation—the enactment of a law on the subject "designating" the uses to which moneys may be applied, etc.; and held that: "While the authority to regulate includes and carries with it the authority to designate, the authority to designate does not and cannot be said to include and carry with it the authority to regulate. Under authority to pass a law regulating any matter, a general system of law may be formulated, embracing every feature, specification and detail that would be germane to the subject." The last proposition has ample authority for its support in Sugar Notch Borough, 192 Pa. 349, in which case the present chief justice says in regard to the Act of April 3, 1851, P. L. 320, entitled: "An act regulating boroughs." Nothing more general and comprehensive on that subject could have been devised. It included the entire range of borough affairs so far as they were within legislative control.

The whole controversy in this case is made to hinge on the effect and meaning to be given to the word "designated" as used in item third of this proclamation, and the word "regulate" as used in the title of the act. The mandate of the constitution with reference to the proclamation is—there shall be no legislation upon subjects other than those designated. The prohibition in regard to the form of a statute is, it shall not contain more than one subject, which shall be clearly expressed in its title. There is apparent justice and reason in providing, that the subject in the title to a general law should be more comprehensive and clearly expressed than in a proclamation to the members of the general assembly, who are convened to consider particular legislation. The framers of the constitution evidently had this difference in mind in not requiring the same particularity in the words used in the proclamation, and that required in the title of statute. In construing a statute, the title may be consulted in aid of the interpretation of the body of the act in cases of ambiguity and uncertainty, and the preamble may be resorted to for aid in its interpretation or to reconcile seeming inconsistencies (Com. v. Marshall, 69 Pa. 328), and generally the words of a statute are to be construed according to their popular and ordinary acceptation, and not necessarily according to the strict rules of etymology or grammar: Com. v. Phila. County Commrs., 1 S. & R. 382; Phila. & Erie Railroad Co. v. Railroad Co., 53 Pa. 20. A general and comprehensive, rather than a strained, technical or specific meaning is ordinarily to be adopted: Com. v. Northern Electric Light & Power Co., 145 Pa. 105.

In applying these rules to the proclamation, we must keep in mind that when the general assembly was convened to enact this statute, it was in response to two proclamations, the earlier one, dated November 11, 1905, "to consider contiguous cities to be united, etc." Second. To increase the interest paid for use of state money, etc. Third. To reapportion the state into legislative districts, etc. Fourth. To provide for personal registration of votes, etc. Fifth. To provide for the government of cities of the first class, etc. Sixth. To designate the amount to be expended for the erection of county bridges, etc.

Seventh. To abolish certain fees, etc., and the later one, dated January 9, 1906, in which the governor adopts his original call, and designates, "additional subjects for the consideration of the General Assembly with a view to legislation at the said session with respect to them;" viz.: First. To revise the laws relative to primary elections, etc. Second. To establish a civil service system, etc., and the third and fourth items above quoted. We conclude that the designation of the subject in the proclamation and its regulation in the title and body of the Act of March 5, 1906, P. L. 78, were sufficient. Standard authorities give more than twenty recognized synonyms in common use for the word "designate," and the word "regulate" is credited with nearly as many. While each word has a distinct and limited meaning, yet each has a number of suggestive equivalents, that are so frequently used and so generally understood that they become intelligible substitutes because of the various senses, primary and secondary, in which they are used. To insist on applying such a restricted meaning to the words in common use in the construction of statutes would limit the legislative vocabulary to words understood by technical scholars only. Such refined distinctions between two words of such flexible meaning and often interchangeable in use are not adopted in the general affairs of men, and it would be drawing too fine a sight for the practical interpretation of statutes.

The order of the court below is reversed and the record is remitted with a procedendo.

*Error assigned* was the judgment of the Superior Court.

*George Patterson* and *Sterling, Higbee & Dunbauld,* for appellant.—The constitution leaves within the discretion of the governor what shall be the subjects for legislation at the special session. There is no question that he alone is responsible for this, and that his discretion in so doing is not the subject of judicial review: Pittsburg's Petition, 217 Pa. 227; Sample v. Pittsburg, 212 Pa. 533.

The fundamental proposition of the appellant is that the proclamation designated as a subject for legislation a simple

act of the nature above indicated and limited in its operation and effect to the classes of persons therein mentioned, while the act as passed is a general system and elaborate scheme intended to form a complete and inclusive regulation of the use of money in politics, or to pass what Judge ORLADY terms this act a "corrupt practices act." That such an act is not the subject designated by the governor in his proclamation is, we think, apparent.

The term "political managers and committees," as used in the proclamation, should be construed to mean what the people ordinarily understand by that term, and as defined by the act it is much more inclusive than popular signification: Com. v. Kebort, 212 Pa. 289.

The proclamation designates as a subject for legislation a law "to require the managing committees and managers of all political parties to file at the close of each campaign a detailed statement in writing, accompanied by affidavit of the amounts collected and the purposes for which they were expended."

The act as passed requires the same thing to be done by candidates. The law proposed by the governor did not comprehend the filing of accounts by candidates.

If the act in any essential particular is unconstitutional, then the whole act must fail: Com. v. Potts, 79 Pa. 164; Holl v. Deshler, 71 Pa. 299; Howard v. R. R. Co., 207 U. S. 463 (28 Sup. Ct. Repr. 141).

There was no contention in the Superior Court, and is not now, that the proclamation is misleading or insufficient. The legislature had an undoubted right to pass an act the subject of which was designated by the third section of the proclamation. The point of the appellants in the Superior Court was, and here is, that this act is not the subject the governor designated: Wells v. Missouri Pac. Ry. Co., 15 L. R. A. 847.

*M. H. Stevenson* and *L. L. Minor*, for appellees.—The act of 1906, both in its title and provisions, is "general and unqualified" and could "require any, all and every person and officer to file accounts."

The subject which the governor designated, and the purpose

which he and the legislature sought to accomplish, was the prevention of "corrupt practices," and all the matters now objected to are "details leading to the accomplishment of that object and are cognate to the subject of legislation and therefore form a part of it: Road in Phœnixville, 109 Pa. 44.

PER CURIAM, February 15, 1909:

The order appealed from is affirmed on the opinion of the Superior Court.

---

# Likins's Petition (No. 2).

*Constitutional law—Special session of legislature—Proclamation of governor—Act of March 5, 1906, P. L. 78.*

1. In construing art. III of the governor's proclamation of January 9, 1906, convening an extra session of the legislature, the courts are to view it as the members of the general assembly were warranted in viewing it, that is, in the light of the whole document together with the earlier proclamation of November 11, 1905, under which the general assembly was specially convened with a view to legislation on this and other specified subjects.

2. Although a governor who has decided to convene a special session of the legislature is empowered to proclaim, to indicate, to designate the subjects for legislative consideration at such session, he cannot by his proclamation, any more than he can by his message to the same body when in regular session, prescribe or limit the manner in which, or the extent to which the legislature may dispose of those subjects, which he designates in his proclamation as matters for legislative consideration. He may by proclamation in the one case, as message in the other, suggest the lines along which in his judgment the lawmaking body could most wisely or effectively operate. Such recommendations are in no wise restrictive of the legislative power. When, therefore, the governor, by his proclamation, couched in such language as he may select, has fairly indicated to the legislators and the people, a general subject for legislative consideration, the legislature, in special session, may lawfully deal with that subject as fully and completely as at a regular session.

3. Article III of the supplemental proclamation of the governor of January 9, 1906, is sufficiently broad to cover the portions of the Act of March 5, 1906, P. L. 78, known as the corrupt practice act, which provides that candidates as well as managing committees and managers of