# Sugar Notch Borough. Appeal of Warrior Run School District.

*Constitutional law — School districts — Boroughs—Title of act — Act of June 1, 1887.*

Where a general title sufficient to cover all the provisions of an act is followed by specifications of the particular branches of the subject with which it proposes to deal, the scope of the act is not limited, nor the validity of the title impaired, except as to such portions of the general subject as legislators and others would naturally and reasonably be led by the qualifying words to suppose would not be affected by the act.

The Act of June 1, 1887, P. L. 285, entitled "A further supplement to an act approved June 11, 1879, entitled 'A supplement to an act for the regulation of boroughs,' approved April 3, 1851, providing for the adjustment of indebtedness and government of the boroughs, townships and school districts affected by changes of limits of any borough in the commonwealth," is not unconstitutional as violating the provisions of the constitution relating to the titles of statutes; and the provisions of the act authorizing the court to ascertain the value of the property retained by the old borough and that transferred to the new, respectively, and to decree a money payment by the one having an undue proportion of the former joint property, are sufficiently indicated in the title.

The Act of June 1, 1887, P. L. 285, is not unconstitutional as a special and local act regulating the affairs of school districts within the prohibition of section 7 of article 3 of the constitution. The act is neither special nor local.

*Constitutional law—Presumption in favor of validity of statutes.*

All the presumptions are in favor of the validity of statutes, and courts are not to be astute in finding objections to them.

The restrictions of the constitution upon legislation apply to direct legislation, and not to the incidental operation of statutes, constitutional in themselves, upon other subjects than those with which they directly deal.

*Constitutional law—Classification—School district.*

It seems that there is no constitutional objection to the classification of school districts.

Chalfant v. Edwards, 173 Pa. 246, commented upon and explained.

Argued April 11, 1899. Appeal, No. 210, Jan. T., 1898, by school district of the borough of Warrior Run, from decree of Superior Court, Jan. T., 1898, No. 13, affirming order of Q. S. Luzerne Co., Jan. T., 1894, No. 283. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from Superior Court.    See 7 Pa. Superior Ct. 4.

The facts sufficiently appear in the opinion of the court of quarter sessions, BENNETT, J., as follows :

Pursuant to previous proceedings had for that purpose, under and in accordance with the provisions of the act entitled, " An act to provide for the division of boroughs and the erection of new boroughs," approved May 29, 1889, P. L. 393, a decree of this court was entered on January 25, 1895, dividing the borough of Sugar Notch, and setting off and erecting, according to the boundaries therein given, the village of Warrior Run (formerly included within the borough of Sugar Notch), into a new borough, under the style and title of " the borough of Warrior Run."

On the day last aforesaid, to wit: January 25, 1895, the auditor, whose report is here excepted to, was appointed under the provisions of the Act of June 1, 1887, P. L. 285. The title and 1st section of this act, being the legislation which is particularly important here, are as follows :

" A further supplement to an act, approved the 11th day of June, Anno Domini, one thousand eight hundred and seventy-nine, entitled 'A supplement to an act for the regulation of boroughs,' approved the 3d day of April, one thousand eight hundred and seventy-one, providing for the adjustment of indebtedness and government of the boroughs, townships and school districts, affected by changes of limits of any borough in the commonwealth.

" Section 1. That, whenever proceedings shall have been or shall hereafter be commenced in any court of this commonwealth for the purpose of changing the limits of any borough by annexing thereto any adjacent tracts of land, or detaching therefrom any territory included therein, and the same shall have been approved by the grand jury to which the application shall have been submitted, it shall be the duty of the court, before entering the decree confirming the same, to appoint an auditor, who shall ascertain the existing liabilities of the several boroughs, townships and school districts, which may be affected by the said change of limits, the amount and value of the property owned by each, and the amount and value of the property, passing to or from each borough, township or school district,

and the assessed valuation of all property liable to taxation for
borough, township or school purposes, as shown by the last
annual assessment in each of said boroughs, townships and school
districts, and within the limits of the part annexed to or de-
tached from said borough, and shall report the same to the said
court, with the form of decree adjusting the liabilities for all
indebtedness, and the value of property held or acquired by
each justly and equitably upon said borough, township and
school district, respectively; and said court shall be authorized
to direct the amounts that shall be paid one to the other, and
the time and mode of payment, and, if necessary to a proper
and just adjustment of the same, may order and direct a special
tax to be levied upon the property so annexed to or detached
from said borough, for the payment of so much of the indebted-
ness, as may be awarded against it and direct how the same
shall be assessed and collected."

The auditor appointed as aforesaid has filed a report in pur-
suance of the provisions of the foregoing act. So far as con-
cerns the school district of Sugar Notch borough and the school
district of Warrior Run borough which was carved out of the
territory of the former and came into existence with the new
borough of Warrior Run, this report shows that there was no
indebtedness of the school district of Sugar Notch borough at
the time of the division; that, considering the value of the school
property of the latter at that time and estimating the rights
thereto of the two school districts on the basis of the relative
assessed valuations of taxable property in each, there remains
in the school district of Sugar Notch borough, school property
to the value of $6,169.74 more than its proportionate share
thereof; and the report recommends a decree that the latter
district pay said sum to the school district of Warrior Run bor-
ough and that the money for the payment thereof be raised by
a special tax in the school district of Sugar Notch borough.
The latter borough is the exceptant here. It attacks that por-
tion of the auditor's report above referred to, and by three of
its exceptions complains that the act of 1887 is unconstitu-
tional: (1) Because the subject of valuing school property and
charging one district to compensate another on that account is
not expressed in the title and violates article 3, section 3, pro-
viding that "No bill, except general appropriation bills, shall

be passed containing more than one subject, which shall be clearly expressed in its title ; " (2) because it attempts to regulate the affairs of certain school districts to the exclusion of others and violates article 3, section 7, prohibiting the passage of " any local or special law . . . . regulating the affairs of . . . . school districts ; " (3) because it attempts to grant certain school districts to the exclusion of others, special and exclusive provisions, and is special legislation and contrary to article 3, section 7, forbidding the passage of " any local or special law . . . . granting to any corporation, association or individual, any special or exclusive privilege or immunity. . . ."

We hold that the act of 1887, in so far as it provides for the valuation and distribution of property owned by school districts affected by changes of borough limits, the creation of indebtedness on that account in favor of and against such school districts, and the enforcement of payment of such indebtedness by the levy and collection of special taxes, is unconstitutional and void, because the subject thereof is not clearly expressed in its title, and it attempts to regulate the affairs of certain school districts in the commonwealth to the exclusion of others, and, therefore, violates section 3 of article 3 of the constitution, providing that " No bill . . . . shall be passed containing more than one subject, which shall be clearly expressed in its title," and is also contrary to that part of section 7 of the same article, prohibiting the passage of " any local or special law . . . . regulating the affairs of . . . . school districts."

The first and second exceptions, as numbered in this opinion, to the auditor's report, are sustained and the report is set aside in so far as it relates to the school district of the borough of Sugar Notch and the school district of the borough of Warrior Run.

*Error assigned* was the decree of the Superior Court affirming the decree of the court of quarter sessions.

*S. J. Strauss*, with him *B. R. Jones*, for appellant.

*William S. M'Lean*, with him *James H. Shea* and *George R. M'Lean*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, July 19, 1899:

1. The title of the Act of April 3, 1851, P. L. 320, is " An

act regulating boroughs." Nothing more general and compre-
hensive on that subject could have been devised. It included
the entire range of borough affairs so far as they were within
legislative control. When, therefore, the Act of June 11, 1879,
P. L. 150, was entitled " A supplement to an act for the regu-
lation of boroughs," it was so far as the title was concerned as
broad as the original act. It comprehended everything relating
to boroughs that was or could be the subject of legislative ac-
tion. The Act of June 1, 1887, P. L. 285, is entitled, " A fur-
ther supplement to an act, approved June 11, 1879, entitled ' A
supplement to an act for the regulation of boroughs,' " etc. If
the title had stopped here it would have been beyond question,
for it would have been as broad as that of the original act and
the first supplement. It would have included the whole sub-
ject of boroughs, and nothing germane to any aspect of that
subject, would have been beyond the limits of the title. But
the title of the act of 1887 did not stop at that point, it pro-
ceeded to specify the particular branches of the general subject
which it intended to deal with, by the words "providing for
the adjustment of indebtedness and government of the bor-
oughs, townships and school districts affected by changes of
limits of any borough in the commonwealth." If we look be-
yond the title to the body of the act of 1879 we find that it
deals with changes of borough limits and therefore the subject
of the act of 1887 is not only within the limits of the title of
the act of 1879, but entirely germane to its enactments. The
only question left therefore in regard to the title of the act of
1887 is whether it is consistent with the body of the act itself.

Where a general title, sufficient to cover all the provisions
of an act, is followed by specifications of the particular branches
of the subject with which it proposes to deal, the scope of the
act is not limited nor the validity of the title impaired except
as to such portions of the general subject as legislators and
others would naturally and reasonably be led by the qualifying
words to suppose would not be affected by the act. This is the
rule established by all our cases. It is an application of the
maxim expressio unius exclusio alterius. The express enumer-
ation of the specific subjects must be affirmatively misleading
as to the intent to exclude others, or the title will not be made
invalid by it.

The provisions of the act authorizing the court to ascertain the value of the property retained by the old borough and that transferred to the new respectively, and to decree a money pay‧ ment by the one having an undue proportion of the former joint property, or in brief to determine the property rights of the two, are argued and were held by the learned court below to be clearly outside of the subjects indicated in the title. In this view we cannot concur. The "indebtedness" which is to be adjusted clearly does not mean the borough debt in its relation to third persons. The legislature would have no power, as it certainly has shown no intention, to interfere for the release of any of the debtors from their obligations to the common creditor: Plunkett's Creek Twp. v. Crawford, 27 Pa. 107. But the adjustment which is made necessary by their new situation is of their financial relations as between themselves. Nor can the word "indebtedness," even as between themselves, be taken in its exact ordinary meaning, as argued by appellee, of unpaid debts existing immediately prior to the change of the borough limits. The legislature, as already said, cannot impair the creditors' claim on all the debtors. The creditor will naturally look first to the one which retains the old name and, in the main, the old limits. But the old borough paying the debt in full will be entitled to contribution from the new, and this is the indebtedness which the statute means to have adjusted in advance. It is not really creating a new debt, but only a new creditor for a proportion of the old debt which was formerly owed in common. This clearly was the view taken in In re the Incorporation of Sharon Hill Borough, 140 Pa. 250, and Darby Borough School District's Appeal, 160 Pa. 79.

The word indebtedness then cannot be taken in its strict ordinary meaning, but must have a broader application, as including financial obligations of all kinds, not only those existing previously, but those necessarily growing out of the separation. And when we consider that the adjustment is to be of "indebtedness and government" the enlarged sense of the word becomes still more clear. Government is a very comprehensive term, and one of the most important subjects included in it is that of finances, including assets in property as well as in money. It was apparent to the legislature that in the division of a borough there would be questions of the division of assets as well as of

liabilities. The analogy of a dissolution of partnership suggested by appellants' argument is very apt and close. So long as the firm continues, the partners may owe each other nothing, but when a dissolution is to be arranged, a proper adjustment of rights and equities may make one a debtor to the other or entitle him to a larger share of the assets. This equitable result is what the act intended to reach in the case of a divided borough. The auditor is to ascertain the liabilities of the boroughs, etc., affected by the change, the property owned by each, the property passing to or from each in the change, and the assessed valuation of taxable property in each, and from these data he is to report to the court a decree " adjusting the liabilities for all indebtedness and the value of property held or acquired by each." We do not think it can be said without hypercriticism that this equitable adjustment of matters necessarily growing out of the main subject of the act, the separation of part of a borough from the rest, is not fairly to be included under the words of the title " adjustment of indebtedness and government." A reader of the title, as already said, finding it a supplement to an act " regulating boroughs," would be warned that the entire subject of boroughs might be included. Reading further he would find that the special subject was changes in borough limits. He would be bound to know that such changes would naturally involve questions of division of property as well as of liability for debts, and the words of the title " adjustment of indebtedness and government " ought fairly to put him on notice that the whole subject of property and liabilities might come within the scope of the act. That is all that the title is required to do.

It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor, and courts are not to be astute in finding or sustaining objections. The evil at which the constitution was aimed is thus stated with great clearness by the present Chief Justice in Road in Phœnixville, 109 Pa. 44: " The design and scope of this constitutional amendment, adopted in 1864, are readily understood when we consider the mischief which it was intended to remedy. Prior to that date the vicious practice had obtained of incorporating in one bill a variety of distinct and independent subjects of

legislation. The real purpose of the bill was often and some-
times intentionally disguised by a misleading title, or covered
by the all comprehensive phrase, 'and for other purposes,' with
which the title of many 'omnibus' bills concluded. Members
of the legislature, as well as the general public, were thus mis-
led or kept in ignorance as to the true character of proposed
legislation." This being the evil intended to be remedied, the
constitutional requirement as to the title is not to be strained
to apply to cases not really within its reasonable intent.

2. But it is also argued and was so held that the act is un-
constitutional as a special and local act regulating the affairs
of school districts, within the prohibition of section 7 of arti-
cle 3 of the constitution. This objection is even less tenable
than the other. The primary subject of the act is not school
districts but boroughs, and its application to the former is only
an incident of its provisions in regard to the latter, a necessary
incident, because previously existing legislation had united the
two in such manner that a change of the borough limits involv-
ing the creation of a new borough also creates a new school
district. It is by no means clear that a regulation of the affairs
of school districts in this incidental way, even though it should
apply to less than all the districts in the state, and thus be in
a sense local, is therefore unconstitutional. The restrictions of
the constitution upon legislation apply to direct legislation, not
to the incidental operation of statutes constitutional in them-
selves upon other subjects than those with which they directly
deal. But we need not rest the case even partially on this
ground. The act of 1887 is neither special nor local. It is the
settled law since Wheeler v. Phila., 77 Pa. 338, that classifica-
tion based on genuine and substantial distinctions is within the
constitutional power of the legislature, and an act which applies
to all the members of the class is general and not special. The
act of 1887 applies to all the members of a distinct class of
school districts, to wit: those specially affected by changes in
the limits of the boroughs with which by previous laws they
are made coterminous. As to all such districts the act makes
certain regulations affecting, it should be noticed, not their
school affairs strictly so called, but their financial, business and
quasi-governmental affairs necessarily involved in changes of
property, assets and liabilities. It makes no changes in the

school laws, the powers and duties of school directors and other officers of the system, or any of the internal affairs and management of the districts themselves except the adjustment of property rights made necessary by the changed territorial limits. Such districts may well constitute a distinct class, marked by peculiar conditions which may at any time become applicable to any district in any borough in the state.

It was thought by the court below that the act was special because there were some school districts in the state, those in townships and cities, which are not included in its provisions. As to townships, it is clear that as boroughs may from time to time be formed out of them the act will at once apply, and even if that were not so, the fact of classification is a sufficient answer to the objection as regards townships, as well as cities. There is no constitutional objection to the classification of school districts any more than of cities. Both are included in the same clause of the constitution prohibitory of local and special legislation, and there is no argument against classification of one that is not equally forcible against the other. But classification may become as necessary for school districts as for cities. The needs and the capabilities of school districts may differ as substantially, if not as widely, as those of cities. They already differ in the number and authority of the school officers, the extent and mode of assessing and collecting school taxes, etc. It would be a most unfortunate clog on the improvement of our school system if Philadelphia, Pittsburg, Allegheny and other cities could not have their high schools, their manual training or industrial schools, or even their kindergartens, without the necessity of imposing the expense of a similar establishment on every borough and sparsely populated township in the state. There is nothing contrary to these views in Chalfant v. Edwards, 173 Pa. 246, so much relied on by appellee. In that case a sub-school district in the city of Pittsburg undertook to issue bonds which it was claimed would increase the debt of the whole district beyond the legal limit. Pittsburg, for school purposes, was under the local act of 1869, but the legislature of 1895 repealed the act of 1869 and on the same day passed another act for the regulation of schools in cities of the second class. The court below, on a taxpayer's bill, declared the latter act unconstitutional, but sustained the former. The main question in

this Court, and the one on which the judgment was reversed, was the validity of the repealing act. It was held that while the repeal of a local act was not prohibited by section 7 of article 3 as a regulation of the affairs of a school district, yet it was local within the meaning of section 8, and required publication of notice in the locality to be affected. On the other question the court below was affirmed on the ground that the act of 1874 classified cities solely with reference to strictly municipal functions, and schools, under the general school law of 1854 and its supplements, could not as yet be considered a branch of the municipal government. Much of what was said by our late Brother WILLIAMS on this subject was by way of historical review of our school system, rather than of discussion of constitutional powers. Whether some of the expressions did not go beyond what the case called for, and farther than can be ultimately sustained, we need not now consider. The utmost that the case can be even claimed to be authority for, is not that the legislature may not classify school districts with reference to cities, but that it has not yet done so.

We have given this case more extended consideration than usual, as was due to the learned courts from whose judgment we have been compelled to differ. In conclusion, it is not inappropriate to direct attention to the fact that the act of 1887 has been in operation for twelve years, has been twice previously before this Court, and has been the ground of action many times before other courts without objection to its constitutionality. It is rather late now to question it. While these circumstances are not conclusive in its favor, yet they are a strong argument that it is not so plainly repugnant to the constitution as it must be to require a court to overturn an act of the legislature.

Judgment reversed and procedendo in accordance with this opinion awarded.