## Seltzer's Petition.

*Appointment of Americanization officers — Constitutional law — Title of act—Statement of purpose—Classification of counties—Act of July 8, 1919.*

1. The title of an act which states its purpose to be to make provision for the instruction of "foreign-born residents," does not give the required notice of the contents of the act where its application is expressly limited to such foreign-born residents as are "unnaturalized." Such a variance is fatal to the validity of the statute and cannot be ignored by the court.

2. Counties cannot be classified by the simple use of such words as "large" or "small," or by referring the matter to judicial discretion in each particular case.

3. The Act of July 8, 1919, P. L. 764, providing for appointment of Americanization officers in counties "having a large resident population of foreign-born residents," is unconstitutional, for the reason that the title does not give notice that the application of the act is limited to such foreign-born residents as are not naturalized, and also for the further reason that the act is made to depend upon an improper classification of counties.

Petition and exceptions. C. P. Schuylkill Co., May T., 1922, No. 387.

*Roscoe R. Koch,* for petitioner.

*John F. Whalen, Daniel W. Kaercher* and *John O. Ulrich,* contra.

*Arthur L. Shay,* for Schuylkill County.

KOCH, J., July 24, 1922.—On April 24, 1922, Livingston Seltzer, who is the Superintendent of Schools in the County of Schuylkill, presented his petition, in which he, *inter alia,* averred:

2 D. & C.

Seltzer's Petition.

"2. That a large percentage of the population of the County of Schuylkill consists of foreign-born people, who are not required by the laws of the State of Pennsylvania to attend the public schools of said county.

"3. That from the nature of the industries of said county and the economic demand for the labor supplied by said foreign-born residents, there has been a steady increase in the number of such people taking up a residence in this county.

"4. That a very large number and proportion of said foreign-born residents within said county have no knowledge of the duties, rights and privileges of American citizenship, and are not acquainted with the principles, institutions and ideals of the Government of the United States of America and the Commonwealth of Pennsylvania.

"5. That your petitioner thinks and believes, and so avers, that it is necessary and advisable to provide courses of study and instruction for said foreign-born residents.

"6. That J. M. Lloyd, M. A. Ph. D., is a resident of Pottsville, said county, where he has been engaged for the past six months, under the auspices of the Y. M. C. A., in the work of Americanization of foreign-born residents, and, in that connection, has organized and conducted night schools throughout certain parts of the county, in which, in all, 387 class sessions have been held and 397 foreign-born residents enrolled in said schools.

"7. That by reason of his said experience as aforesaid, and like experience elsewhere, the said J. M. Lloyd is suitable and qualified to instruct the foreign-born residents in this county, and your petitioner, under the provisions of the Act of Assembly approved July 8, 1919, P. L. 764, nominates said J. M. Lloyd and prays this honorable court to appoint him as instructor, as provided in said act, for a period of not less than one or more than three years, at such a salary as your honors may direct."

The county superintendent has since certified that J. M. Lloyd is of good moral character and has proper and sufficient educational qualifications for said appointment.

Upon presentation of the petition, we fixed Monday, May 15th, for a hearing, and directed notice to be given to the county commissioners not less than fifteen days before said hearing. The hearing was had on May 22, 1922, at which time the county solicitor appeared and filed the county commissioners' answer, to the effect that the county commissioners have no funds to pay the salary for such an officer, and that appointments should not be made in the middle of the year, but that appointments should begin as of Jan. 1, 1923, so that the commissioners might arrange the finances to meet the extra expense upon the county. On June 24th, the time fixed for the argument, the county solicitor came into court and objected to the appointment of an Americanization officer upon the ground that the Act of July 8, 1919, P. L. 764, is unconstitutional.

We will, therefore, give our attention first to the question of the constitutionality of the act. It is attacked upon two grounds: First, that the title of the act is defective; and, second, that the act itself impliedly classifies counties improperly. The title of the act is as follows: "An act to provide instruction in citizenship and the principles of the Government of the United States of America and of this Commonwealth to foreign-born residents of the State of Pennsylvania in the several counties thereof who are not required to attend the public schools of this Commonwealth; providing for the appointment of instructors and interpreters; and providing for their compensation, payable by the several counties; and defining the powers and duties of

such instructors and the county superintendents of schools." It is claimed this title does not clearly express the subject, object and purpose of the act as required by section 3 of art. III of the Constitution, because the 1st section of the act is contradictory. It is: "That the judge or judges of the Court of Common Pleas of any county in this Commonwealth having a large resident population of foreign-born residents may, as hereinafter provided, appoint one or more competent instructors, whose duty it shall be to teach and instruct foreign-born residents in said county who are not required to attend the public schools of said county in the duties, privileges and rights of citizenship, and in the principles and the institutions of the Government of the United States of America and of this Commonwealth, and to furnish and to teach to said unnaturalized residents courses of study and instruction to be prepared and furnished to said instructors by the superintendent of schools of said county, and according to plans and programs prepared by said superintendent for such purpose." By the language just quoted it seems to appear that whilst the schools to be established under the law are for the instruction of foreign-born residents who are not required to attend the public schools, yet the instruction is limited to only such foreign-born residents as are not naturalized. The act, therefore, is apparently narrower in its purpose than is the purpose expressed in the title. Construing the words "said unnaturalized residents," one might take them to refer to and mean "foreign-born residents." Otherwise, the word "said" is entirely useless and without any meaning whatever in the connection in which it is used. But the word "unnaturalized" has a very clear meaning, and if the act is intended for the benefit of only foreigners who are not naturalized, and who may have, therefore, less need for the intended instruction than foreigners who have become naturalized, its purpose is not stated in the title of the act. The legislative purpose as stated in the title is, therefore, not made to clearly appear in the legislation itself. If the purpose is to instruct all foreign-born residents above school age, then the legislation fails in that purpose, because the instruction is, by the language of the act, to be restricted to unnaturalized foreign-born residents. From the title of the act it is clearly inferable that all foreign-born residents in the several counties of this State above the common school age may receive free instruction in the duties, privileges and rights of citizenship, whether they be citizens or not, whereas by the act itself the instruction is, in fact, free to only unnaturalized residents. "Unnaturalized" is a word that every member of the legislature must be presumed to have understood when the act was passed, and presumably the word was used advisedly by the legislature in the passage of the act. Possibly, the object of the legislation is to educate as rapidly as possible unnaturalized foreigners with a view of thereby influencing them to become citizens of the United States.

Again, according to the title of the act, the instruction is to be given to foreign-born residents "in the several counties" of this State, whereas, by the language of the 1st section, the instruction is to be restricted to counties "having a large resident population of foreign-born residents." In view of such provision, it must be said that it is not clearly expressed in the title that the purpose of the act is to restrict instruction to counties in which only a large resident population of foreigners exists. The act is to apply only to counties in which the judge or judges of the Courts of Common Pleas consider the population of foreign-born residents as *large*, and even then it is not the duty of the courts to appoint instructors. The courts *may* do so, but they are not compelled to do it. According to the language of the 1st section of the act, they have discretionary power in the premises.

2 D. & C.

Seltzer's Petition.

The subject of a bill must be clearly expressed in its title: Section 3, art. III, Constitution. But the title of the act before us, while clear in itself, is not clear as to the purpose or subject disclosed in the act itself. The title must so clearly express the purpose as to give notice thereof to the members of the legislature and the persons interested: Road in Phœnixville, 109 Pa. 44; Philadelphia v. Railway Co., 142 Pa. 491. But "it is sufficient if it fairly gives notice of the subject of the act so as reasonably to lead to inquiry into the body of the bill: Allegheny County Home's Appeal, 77 Pa. 77:" Rogers v. Improvement Co., 109 Pa. 109. However, a title which tends to deceive or mislead as to the subject of the bill is not sufficient. The purpose of the bill is to give notice of the legislation contemplated. When it imports the purpose of the bill to be one subject, while the bill itself shows a different subject to be the purpose, the bill is undoubtedly misleading. In such case it would be a gross perversion of language to declare that the subject is clearly expressed in the title: Rogers v. Improvement Co., 109 Pa. 109. "When the title conveys the belief that one subject is the purpose of the bill, while another and a different one is its real object, it is evident that it tends to mislead by diverting the attention from the true object of the legislation. Confiding in the title as applicable to a purpose unobjectionable to the reader, he is led away from an examination of the body of the bill. In such case the subject is not clearly expressed in the title:" Union Passenger Ry. Co.'s Appeal, 81* Pa. 91, 94. "While it may be difficult to formulate a rule by which to determine the extent to which the title of a bill must specialize its object, it may be safely assumed the title must not only embrace the subject of the proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be specially interested therein. Unless it does this, it is useless:" Road in Phœnixville, 109 Pa. 44; Sewickley Borough v. Sholes, 118 Pa. 165. If the title of an act tends to mislead or avert inquiry into its contents, it is faulty. But all the presumptions are in favor of the validity of statutes, and courts are not to be astute in finding objections to them: Sugar Notch Borough, 192 Pa. 349; Goebeler v. Wilhelm, 17 Pa. Superior Ct. 432. However, in the case before us the variance between the purposes expressed in the title as compared with those expressed in the statute is so apparent in the matters hereinbefore pointed out that we cannot ignore that variance.

Nor can counties be classified by the simple use of such words as "large" or "small," or by referring the matter to judicial discretion in each particular case. Population is the constitutional basis for the classification of counties: Com. ex rel. Fertig v. Patton, 88 Pa. 258. And the counties of this State have been so classified by the Act of July 10, 1919, P. L. 887. While it is a cardinal rule that all statutes are to be so construed as to sustain them rather than ignore them, and that, if it can be done, a court should reconcile the different parts of a law rather than declare it void (Com. v. Moore, 2 Pa. Superior Ct. 162), yet, where an act is undoubtedly unconstitutional, a court must not hesitate to say so.

We think the objection of the county commissioners on both constitutional grounds is well taken and must be sustained.

And now, July 24, 1922, the petition is dismissed, at the costs of the county, and an exception is allowed the petitioner and bill is sealed.