## Extraordinary Session of Legislature.

SCHNADER, Attorney General, November 16, 1931.—I have before me a certified copy of Senator Salus's motion passed on Monday, November 9th, requesting me to supply to the Senate, through you, my opinion as to the constitutionality of the Governor's call for the present extraordinary session, and of the bills introduced last week, and, from time to time, of bills presented hereafter during the session. Subject to a reservation which I shall state at the conclusion of this communication, it gives me great pleasure to comply with the Senate's request.

The provisions of the Constitution dealing with extraordinary sessions of the General Assembly appear in article IV, section twelve, and article III, section twenty-five. They are:

Article IV, section twelve: "He [the Governor] may, on extraordinary occasions, convene the General Assembly. . . . He shall have power to convene the Senate in extraordinary session by proclamation for the transaction of Executive business."

Article III, section twenty-five: "When the General Assembly shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the Governor calling such session."

These constitutional provisions have been construed by our appellate courts in a number of cases; and it will be helpful, I am sure, to review these cases before dealing with the constitutionality either of the Governor's call or of the bills which have been introduced.

Pittsburg's Petition, 217 Pa. 227, was decided in 1907, following the special session of the legislature held in 1906.

Governor Pennypacker called the special session by proclamation dated November 11, 1905, to convene on January 15, 1906. In his proclamation, the Governor specified seven subjects which he asked the legislature to consider. The first subject was:

"To enable contiguous cities in the same counties to be united in one municipality in order that the people may avoid the unnecessary burdens of maintaining separate city governments."

On January 9, 1906, the Governor issued a second proclamation, adding four subjects to the list contained in the original proclamation. The fourth was as follows:

"To enable cities that are now or may hereafter be contiguous or in close proximity, including any intervening land, to be united in one municipality, in order that the people may avoid the unnecessary burdens of maintaining separate municipal governments. This fourth subject is a modification of the first subject in the original call, and is added in order that legislation may be enacted under either of them, as may be deemed wise."

It will be noted that in this subject certain words of the first subject of the original call were omitted and other words were added. The omitted words were "in the same counties." Among those added were: "or in close proximity, including any intervening land."

The legislature passed the Act of February 7, 1906, P. L. 7, entitled "An act to enable cities that are now, or may hereafter be, contiguous or in close proximity, to be united, with any intervening land other than boroughs, in one municipality; . . ."

Under this act the cities of Pittsburg and Allegheny were consolidated by the Court of Quarter Sessions of Allegheny County. From the consolidation decree an appeal was taken to the Superior Court, and subsequently from that court to the Supreme Court. Both appellate courts sustained the decree.

The first contention of the appellants was that the Act of 1906 was unconstitutional because it was not legislation upon a subject designated in the proclamation of the Governor calling the special session. The Supreme Court held that, while the act did not come within subject "First" of the original proclamation, it did come within subject "Fourth" of the supplemental proclamation, and that the Governor's supplemental proclamation had validly enlarged the scope of legislative action at the special session.

In speaking for the court, Mr. Justice Brown said, at page 230:

"In the original proclamation the legislation to be considered by the general assembly on the subject of the consolidation of cities was confined to contiguous cities in the same county, and it may well be contended that, as the mandate of the constitution is imperative that the legislature, at the special session, shall pass no law upon any subject not designated in the call, the act is technically without it. The act is not for the consolidation of two contiguous cities, situated in the same county, but for that of any two, contiguous or in close proximity, wherever situated. They may be in different counties. We need not, however, pass upon the sufficiency of the first proclamation to sustain the act as being one of the subjects of legislation designated in it.

. "Whether the general assembly ought to be called together in extraordinary session is always a matter for the executive alone. How it shall be called, and what notice of the call is to be given, are also for him alone. The constitution is silent as to these matters, and wisely so, for emergencies may arise . . . requiring the instant convening of the legislature, and, in the power given to the governor to call it, no time for the notice is too short, if it can reach the members of the general assembly; . . . no form of proclamation is to be followed, and if, after one has been issued, it occurs to the executive that other subjects than those designated in it should be passed upon by the legislature, he can unquestionably issue another, fixing the same time for the meeting of the general assembly as was fixed in the first, and designate other subjects for its consideration. . . . The proclamation of Jan-

uary 9 is in effect a second proclamation. . . . It would be judicial hyper-criticism to declare his second notice or proclamation insufficient to authorize the legislature to pass the act under consideration."

In Likins's Petition (No. 1), 223 Pa. 456, Governor Pennypacker's call for the Special Session of 1906 was again before the courts. On this occasion the Act of March 5, 1906, P. L. 78, was challenged as legislation not coming within the Governor's proclamation. The lower court held the act unconstitutional, but on appeal the Superior Court (37 Pa. Superior Ct. 625), reversing the lower court, sustained the act, and the Supreme Court affirmed the Superior Court decision.

The opinion of the Superior Court was written by Judge Orlady, who said, at page 632:

". . . In order to interpret the proclamation of the governor, we are bound to give the words used the same fair and reasonable meaning and intendment which we apply when considering a statute, and the general scope and sufficiency of the proclamation is to be determined by the same well-known rules. The purpose of the proclamation is to inform the members of the legislature of the designated subject which they are convened to consider, and when the general assembly enacts a law which is fully and clearly responsive to such a call, both in its title and in the body of the act, it is playing on words to say that the call, as such, was misleading or insufficient. . . ."

In Likins's Petition (No. 2), 223 Pa. 468, the Supreme Court also affirmed an opinion of the Superior Court in which it interpreted Governor Pennypacker's proclamation convening the Special Session of 1906. In this case Judge Orlady said, at 37 Pa. Superior Ct. 636, 638:

"Item Third in the second proclamation of the governor is as follows: 'To designate the uses to which moneys may be applied by candidates, political managers and committees in political campaigns, both for nominations and elections, and to require the managing committees and managers of all political parties to file with some designated official at the close of each campaign a detailed statement in writing, accompanied by affidavit, of the amounts collected and the purposes for which they were expended.'

"In the analysis of this item of the proclamation we are to view it as the members of the general assembly were warranted in viewing it, that is, in the light of the whole document, together with the earlier proclamation of November 11, 1905, under which the general assembly was specially convened with a view to legislation on this and other specified subjects.

"It is urged that the third item in this proclamation contains two subjects; or at least a principal and a sub-subject; for the purposes of this case, conceding this to be the fact, yet, the reason for the constitutional mandate prohibiting legislation on any subjects at a special session save those designated in the proclamation of the governor is fairly apparent. The purpose was that the legislators, thus unusually summoned, and the public at large should be advised, as to the general character of the legislation that could or might be constitutionally enacted at such special session. Although a governor who has decided to convene a special session of the legislature is empowered to proclaim, to indicate, to designate the subjects for legislative consideration at such session, he cannot by his proclamation, any more than he can by his message to the same body when in regular session, prescribe or limit the manner in which or the extent to which the legislature may dispose of those subjects, which he designates in his proclamation as matters for legislative consideration. He may by proclamation in the one case, as by message in the other, suggest the lines along which in his judgment, the lawmaking body

could most wisely or effectively operate. Such recommendations are in nowise restrictive of the legislative power. When, therefore, the governor, by his proclamation, couched in such language as he may select, has fairly indicated to the legislators and the people, a general subject for legislative consideration, the legislature, in special session, may lawfully deal with that subject as fully and completely as at a regular session. . . .

"It is necessary that the subject be sufficiently designated in the proclamation to bring about intelligent and responsive action by the assemblymen. It is not required by the constitution that the subject be as clearly expressed in the proclamation as in the title to an act, nor is it required that the details by which the desired results may be accomplished be stated in the call, as this is necessarily a brief suggestion of a subject in such words so as reasonably to direct to it the attention of the legislative mind. This accomplished, the purpose of the constitution is fulfilled and the mission of the call is ended."

It would appear from a careful consideration of these cases that the Governor has absolute discretion regarding the question whether the General Assembly shall be convened in extraordinary session and as to the notice to be given; that the legislature cannot modify or expand the subjects stated in the Governor's call; but that when the Governor has stated a general subject followed by certain details, the details are to be regarded in the light of recommendations and not as limiting the scope of the general subject previously stated. Clearly, it is for the Governor alone to determine what the subjects of legislation shall be, whether they shall be many or few, and whether they shall be broad or narrow; but in construing the subjects stated by the Governor the General Assembly may, and the courts will, construe liberally the language used by the Governor.

Sweeney v. King, 289 Pa. 92, was decided in 1927, following the Special Session of 1926. This case decided flatly that constitutional amendments may be proposed at special sessions even though their subject matter is not included in the Governor's proclamation. This for the reason, in the language of Mr. Justice Simpson, that "constitutional amendments are not 'legislation,'" within the meaning of article III, section twenty-five, of the Constitution.

Having in mind the principles stated by the courts in the cases cited, I shall discuss the constitutionality of the call and of the bills thus far introduced in the Senate.

The Call. I have no doubt whatever regarding the validity of the Governor's proclamation convening the General Assembly in special session or of the supplemental proclamation adding to the list of subjects to be considered at the special session. I am of the opinion that they are constitutional.

Senate Bill No. 1, proposing to amend the appropriation made in 1931 for the construction of the Pymatuning Dam. This bill comes within subject No. 9 of the original proclamation, and is clearly constitutional.

Senate Bill No. 2, proposing an amendment to article XIV, section one, of the Constitution. As already pointed out, amendments may be proposed whether or not they are mentioned in the call for the special session. Therefore, this bill is valid.

Senate Bill No. 3, authorizing counties and other political subdivisions of the state to levy taxes and expend money for unemployment relief. This bill comes within subject No. 5 of the original proclamation, and may, therefore, be enacted at the special session. It involves other interesting constitutional questions which were carefully weighed when the bill was prepared in my office. The principal question is whether the General Assembly can authorize political subdivisions of the Commonwealth to appropriate money to institu-

tions or associations which assist or relieve the poor or provide medical care and treatment for sick or injured persons. The bill declares specifically that it is a proper governmental function of any municipal subdivision of this Commonwealth to expend money for the relief of distress caused by unemployment during prolonged periods of economic depression, and then expressly authorizes money to be expended for relief in particular ways. In my judgment, the General Assembly has the power to say what the governmental functions of political subdivisions of the Commonwealth are; and, having declared that unemployment relief is such a function, it may expressly authorize the appropriations specified in this measure. I am of the opinion that the bill is constitutional.

*Senate Bill No. 4, making an emergency appropriation to the Governor to be expended by him with the approval of the Auditor General and State Treasurer for projects in which labor can be employed.* This bill comes within subject No. 4 of the supplemental proclamation, and may, therefore, be passed at this session. The only other constitutional question which occurs to me is whether an appropriation such as this could be attacked as a delegation of legislative power to executive officers. In view of the facts that this is an emergency appropriation, that it can be allocated to departments, boards or commissions to do only such work as they have already been authorized by law to undertake and perform, or by the Department of Property and Supplies only for *necessary* building and other projects, I am of the opinion that the bill does not delegate legislative power to executive officers. It is to be remembered that the Governor, the Auditor General and the State Treasurer constitute the Board of Commissioners of Public Grounds and Buildings and, as such, have for many years exercised wide discretionary powers. In my opinion, the bill is constitutional.

*Senate Bill No. 5, making additional appropriations to the Department of Military Affairs for veterans' relief and to the Department of Welfare for maintenance of state-owned hospitals.* This bill covers subjects Nos. 2 and 3 of the supplemental proclamation. In my opinion, it is constitutional in every respect.

*Senate Bill No. 6, making an emergency appropriation to the Department of Welfare for the care and treatment of indigent sick and injured persons in non-sectarian hospitals not owned by the state.* This bill comes within subject No. 1 of the supplemental proclamation. It can, therefore, be passed at this special session. The bill differs from the act which was held unconstitutional in Collins *v.* Martin et al., 290 Pa. 388, in that it provides expressly that the appropriation must be used for the care and treatment of persons only in non-sectarian hospitals. This difference eliminates the constitutional objection sustained in that case. In my opinion, the bill, as written, is constitutional.

*Senate Bill No. 7, making an appropriation to the Department of Property and Supplies for the erection of an additional office building in Capitol Park and for grading and terracing the ground surrounding it.* This bill comes within subject No. 4 of the supplemental proclamation, can be passed at this session, and is, in my opinion, constitutional.

*Senate Bill No. 8, entitled "An act for the acquisition of property by the Commonwealth east of the Soldiers' and Sailors' Memorial Bridge in the City of Harrisburg, and making an appropriation."* I am of the opinion that this bill, as drawn, cannot be passed at this session. The bill could not be construed more broadly than its title, and its title does not come within any subject stated in the Governor's original or supplemental proclamations.

*Senate Bill No. 9, providing for an extension of Capitol Park, for the acquisition of real estate in connection therewith, and for the demolition of the buildings and structures thereon.* This bill comes within subject No. 4 of the Governor's supplemental proclamation, can be passed at this session, and is, in my judgment, constitutional.

*Senate Bill No. 10, concerning unemployment relief and creating a State Commission on Unemployment Relief.* This bill comes squarely within subject No. 1 of the original proclamation, and can be passed by the special session. In my opinion, the bill is constitutional.

It is true that article III, section eighteen, of the Constitution prohibits appropriations to persons or communities, and that under date of October 27, 1931, I rendered to the Governor Formal Opinion No. 30 [Appropriation for Unemployment Relief, 15 D. & C. 673], in which I expressed the view that this section of the Constitution prevents appropriations for direct unemployment relief. It is to be noted, however, that the Constitution applies only to "appropriations." It does not prohibit the creation of agencies to supervise relief extended in other ways; nor does it prohibit the legislature from authorizing a state agency to accept contributions for relief and to disburse the moneys contributed for the purposes specified by the contributors. It is also, in my judgment, within the power of the legislature to authorize the issuance of receipts for moneys contributed in which the statement is made that, if at a future date the people adopt a pending constitutional amendment, the money shall be repaid as per the provisions of such pending amendment.

It is also my belief that the legislature may make an expense appropriation to a state agency created, among other purposes, for supervising the administration of unemployment relief by local authorities and for disbursing, in accordance with the instructions of the donors, money contributed for relief purposes. Biennially, the legislature makes appropriations to the Department of Welfare to supervise the administration of poor relief by local authorities throughout the Commonwealth. Similarly, the legislature has authorized the acceptance by all departments, boards and commissions of contributions to be used in connection with the work of such departments, boards and commissions. The overhead expense attending the expenditure of such contributions is paid out of money appropriated by the legislature. There is no constitutional provision forbidding any of the appropriations mentioned in this paragraph.

*Senate Bill No. 11, authorizing the Department of Highways to construct, reconstruct or resurface roads, highways or streets anywhere in Pennsylvania wholly or partially at state expense.* This bill clearly comes within subject No. 7 of the original proclamation, can be passed at the special session, and is constitutional.

*Senate Bill No. 12, authorizing the issue and sale of bonds by the Commonwealth if and when the constitutional amendment proposed in Senate Bill No. 16 is adopted by the people.* This bill comes within subject No. 4 of the Governor's first proclamation, and can be passed at this session. The bill provides expressly that it shall become effective only after the approval by the electors of the constitutional amendment proposed by Senate Bill No. 16. This proposed legislation follows a precedent already established in connection with other proposed loan amendments. I am of the opinion that the bill is constitutional.

*Senate bill No. 13, authorizing counties, cities, boroughs, townships, school districts and poor districts to negotiate temporary emergency loans for cer-*

*tain purposes during 1932 and, if necessary, to refund such loans annually by temporary emergency loans during the four succeeding years.* This bill comes within subject No. 2 of the Governor's original proclamation. The loans authorized by the bill are to be evidenced by notes maturing within the year of their date, payable out of the revenues of that year, and if not so paid, then payable out of the revenues of the succeeding year before any other appropriations are made from them. Under the decisions of the courts, these loans would not constitute a debt within the meaning of the constitutional provisions restricting the indebtedness of political subdivisions of the Commonwealth. In my opinion, the bill is constitutional.

*Senate Bill. No. 14, authorizing the Governor to appoint commissioners to endeavor to negotiate an interstate compact for the rehabilitation of the bituminous coal industry.* This bill comes within subject No. 11 of the Governor's proclamation, can be passed at this session, and is, in my opinion, constitutional.

*Senate Bill No. 15, proposing an amendment to article IX, section four, of the Constitution.* Clearly, this bill may be introduced at this session and can validly be passed.

*Senate Bill No. 16, proposing an amendment to the Constitution to be known as the "Unemployment Relief Amendment."* Like Senate Bill No. 15, this bill can clearly be passed at this session without constitutional objection.

*Senate Bill No. 17, amending the General Appropriation Act of 1931 in certain particulars.* In my opinion, this bill comes within subject No. 8 of the Governor's original proclamation, as modified by subject No. 4 of his supplemental proclamation, and is constitutional. Appropriations made under these subjects must enable state agencies "by undertaking additional projects to give work to the unemployed," or "enable schools in certain districts to remain open," or "enable newly imposed taxes to be collected."

All of the increased appropriations, except two, authorize the payment of salaries, wages or other compensation by the several departments to employees of all classes. It is obvious that increased appropriations for salaries and wages will enable additional projects to be undertaken through which work may be given to the unemployed.

Of the two appropriations which do not expressly authorize additional payroll expenditures, one merges and increases two items of the appropriation to the Department of Military Affairs and adds to the purposes for which the merged appropriation may be used, the general improvement of the State Military Reservation. The purpose of this appropriation is to enable the addition to the reservation, at Indiantown Gap, to be prepared for use at once. This will involve large expenditures for labor.

The other exception is an increase in the appropriation to the Department of Property and Supplies for supplies and printing. This increase is necessary in order to pay, in part, the cost of this special session.

The bill also provides for the anticipation in certain cases of amounts due by the state to school districts. This provision will "enable public schools in certain districts to remain open."

The additional appropriation to the Department of Revenue comes within that part of subject No. 4 of the supplemental call which authorizes appropriations to be increased "to enable newly imposed taxes to be collected."

*Senate Bill No. 18, authorizing tax sales to be adjourned in certain cases.* This bill is covered by subject No. 6 of the Governor's original proclamation, can be passed at the special session, and is, in my opinion, constitutional.

*Senate Bill No. 19, entitled "An act to reduce the salary and compensation of certain state employes for a two-year period."* In my opinion, this bill

cannot validly be passed at this session, for the reason that it could not possibly be construed as coming within any of the subjects stated by the Governor in his original or supplemental proclamations.

As I stated at the outset, I have cheerfully complied with the request made in the motion of the Senate passed on November 9, 1931, and I shall continue to comply with that request throughout the continuance of the special session. However, I feel it my duty to say that I comply with this request subject to the reservation that my action in so doing shall not be deemed a precedent. At a regular session of the General Assembly a request similar to that to which I am now responding would impose upon the Attorney General a task which it would be next to impossible to perform, unless the regular work of his office were to be temporarily abandoned. However, this special session is called to deal with an emergency, and it gives me the greatest pleasure to further in every respect fulfillment of the evident desire of both houses of the General Assembly to meet the emergency in the shortest space of time and without any unnecessary delays.

From C. P. Addams, Harrisburg, Pa.